NATIONAL CABLE & TELECOM-
MUNICATIONS ASSOCIA-
TION Petitioner,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents.

Qwest Communications International
Inc., Intervenor.

No. 03–1140.

United States Court of Appeals,
District of Columbia Circuit.

Feb. 17, 2004.

Daniel Leslie Brenner, Michael Stuart
Schooler, Washington, DC, for Petitioner.

John A. Rogovin, Daniel McMullen Arm-
strong, Associate General Counsel, Grego-
ry M. Christopher, Counsel, James M.
Carr, Counsel, Robert Hewitt Pate, III,
Robert B. Nicholson, Attorney, Steven Jef-
frey Mintz, Washington, DC, for Respon-
dents.

Robert B. McKenna, Jr., Washington,
DC, for Intervenor.

Matthew C. Ames, Miller & Van Eaton,
Jean Lynn Kiddoo, Swidler, Berlin, Sher-
eff and Friedman, Washington, DC, for
Amicus Curiae for Respondents.

Before: EDWARDS, TATEL, and
ROBERTS, Circuit Judges.

## JUDGMENT

PER CURIAM.

This cause was considered on a petition
for review of an order of the Federal
Communications Commission and was
briefed by counsel. It is

ORDERED AND ADJUDGED that the petition
for review of the Order of the Federal
Communications Commission ("FCC" or
"Commission") is hereby granted and the
case is remanded.

In this case, the Commission issued a
final Order which, in relevant part, modi-
fies the rules governing the disposition of
"home run" cable wire installed in multiple
dwelling units ("MDUs") after a subscriber
or the owner of an MDU terminates ser-
vice. See Telecommunications Services In-

side Wiring Customer Premises Equipment, First Order on Reconsideration and Second Report and Order, 18 F.C.C.R. 1,342, 2003 WL 183999 (2003), 68 Fed.Reg. 13,850 (Mar. 21, 2003) [hereinafter "Order"], *reprinted in* Joint Appendix ("J.A.") 156–214. At issue here is the portion of the Order that amends the Note to 47 C.F.R. § 76.5(mm)(4).

Section 76.5(mm)(4) of the disputed rule states:

> As used in this paragraph (mm)(3), the term "physically inaccessible" describes a location that:
>
> (i) Would require significant modification of, or significant damage to, preexisting structural elements, and
>
> (ii) Would add significantly to the physical difficulty and/or cost of accessing the subscriber's home wiring.

47 C.F.R. § 76.5(mm)(4) (2003). Prior to the Order amending the rules, the Note to § 76.5(mm)(4) stated:

> For example, wiring embedded in brick, metal conduit or cinder blocks with limited or without access openings would likely be physically inaccessible; wiring enclosed within hallway moldings would not.

47 C.F.R. § 76.5(mm)(4) Note to Paragraph (mm)(4) (2002).

In the Order at issue here, the Commission amended the Note to indicate that wiring embedded in sheet rock would also be considered physically inaccessible. In reaching this determination, the Commission first states:

> We conclude that cable wiring behind sheet rock is "physically inaccessible," as that term is used in Section 47 C.F.R. § 76.5(mm)(4) of the Commission's rules. As stated above, our rule defines "physically inaccessible" as "requir[ing] significant modification of, or significant damage to preexisting structural ele-

ments." We believe that the term "structural elements" encompasses sheet rock, otherwise known as wallboard. The "Note" appended to Section 76.5(mm)(4), which helps define "inaccessibility," states that "wiring embedded in brick, metal conduit or cinder blocks with limited or without access openings would likely be physically inaccessible; wiring within hallway molding would not." Sheet rock and other similar materials are not identified specifically. In our view, sheet rock is more like "brick or cinder block," materials also commonly used to form ceilings and hallways, than molding, which is not.

Order at 1362 ¶ 52 (citations omitted). What is noteworthy is that nothing in the Commission's Order explains why or how accessing wiring behind sheet rock requires "significant modification of, or significant damage to" the sheet rock. The Order simply concludes that sheet rock is more like brick or cinder block than molding, because sheet rock, cinder block, and brick are purportedly used to form ceilings and hallways and molding is not. The FCC's Order fails to explain the relative nature of the "damage" or "modification" related to accessing wiring behind sheet rock.

The Commission's Order further states:

> The definition of "physically inaccessible" also requires that accessing the wiring at that point would "add significantly to the physical difficulty and/or cost" of connecting. While we acknowledge that cutting a hole through and repairing sheet rock is neither as physically difficult nor as costly as boring through brick, metal or cinder block, we are satisfied that it adds significantly to the physical difficulty and cost of wiring an MDU. For this reason we conclude that wiring that is hidden behind sheet rock in a MDU wall or ceiling is "physically

inaccessible" as the term is used in the Commission's rule.

*Id.* ¶ 53 (citations omitted). Here, again, the Commission offers no support for its conclusion. The Commission candidly acknowledges that cutting through sheet rock is easier than boring through brick, metal, or cinder block, and then offers no support whatsoever for the conclusion that the lesser physical difficulty and cost are "significant."

In sum, the FCC's Order merely states unsupported conclusions. Therefore the Order offers no reasoned basis for the amended Note to § 76.5(mm)(4). Accordingly, the petition for review is granted, and the case is remanded to the Commission for further consideration consistent with this Judgment.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R.App. P. 41(b); D.C.Cir. Rule 41.